**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

OSNIL VENTURA,

                         *Plaintiff*,

-against-

LYON LOGISTICS INC, LEONARD CENSI, and ORANE HAUGHTON,

                         *Defendants*.

Civil Action No.

**COMPLAINT**

**Jury Trial Demanded**

---

Plaintiff Osnil Ventura ("Plaintiff" or "Ventura"), brings this action for damages and equitable relief against defendants, Lyon Logistics Inc. ("Lyon Logistics"), Leonard Censi ("Censi"), and Orane Haughton ("Haughton"), collectively the "Defendants", upon personal knowledge as to himself and upon information and belief as to others:

**NATURE OF THE ACTION**

1. This lawsuit seeks to recover all available damages, including liquidated damages, prejudgment interest, penalties, and attorneys' fees and expenses on account of Defendants' failure to pay overtime, and spread-of-hours compensation; Defendants' failure to provide any accurate wage notices and wage statements; Defendants' failure to pay for time spent by Plaintiff attending mandatory trainings; and Defendants' discriminatory and retaliatory conduct against Plaintiff in his status as a caregiver under the New York State Human Rights Law and the New York City Human Rights Law.

**PARTIES**

2. Plaintiff Osnil Ventura is an adult, over eighteen years old, residing in Bronx, New York.

3. Plaintiff was, throughout his entire employment with Defendants, a covered, non-exempt employee within the meaning of the Fair Labor Standards Act ("FLSA") and New

1

York Labor Law ("NYLL"). As such, Plaintiff was, and is, entitled to be paid in full for all hours worked, including overtime at time and a half.

4. Defendant Lyon Logistics Delivery and Courier Services is a foreign business corporation, existing under the laws of the State of Connecticut, and headquartered in Westchester County with a service of process address of 39 Court Street, Freehold, New Jersey 07728.

5. Lyon Logistics may be referred to as the "Entity Defendant."

6. Upon information and belief, Defendant Leonard Censi is the owner of Lyon Logistics.

7. Defendant Orane Haughton was Plaintiff's manager during his employment.

8. The Entity Defendant and Individual Defendants all simultaneously employed Plaintiff within the meaning of NYLL.

9. The Entity Defendant is considered a large employer, having at least eleven (11) or more employees during the duration of Plaintiff's employment.

10. Defendants each maintained control, oversight, and direction over Plaintiff in regards to timekeeping, payroll, and other employment practices, and functioned as employers pursuant to the NYLL.

11. Defendants, by virtue of ownership, management, and control over the wages and work of Plaintiff, are each considered employers under the NYLL §190(3).

12. Defendants apply the same employment policies, practices, and procedures to all Manual Workers in its operation, including policies, practices, and procedures with respect to payment of wages.

**JURISDICTION AND VENUE**

13. This Court has original jurisdiction pursuant to the Fair Labor Standards Act and

diversity jurisdiction because Plaintiff and Defendants are citizens of different states. Specifically, this Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and 28 U.S.C. §§ 1331 and 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

14. Defendants are subject to personal jurisdiction in New York because they do business in New York.

15. Venue is proper in the Southern District of New York pursuant to 28 U.S.C § 1391(b)(2) because of substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

16. A copy of this lawsuit is being sent to the New York City Human Rights Commission in accordance with the statutory provision in the NYCHRL.

## PLAINTIFF'S FACTUAL ALLEGATIONS

17. Plaintiff Osnil Ventura was employed by Defendants as a Delivery Driver from January 2020 to December 2021.

18. Plaintiff applied to work for Defendants on Indeed.

19. Valery, the Lyons Logistics Office Manager, contacted Plaintiff via email and interviewed him in person in early January 2020 at the Hawthorne, New York headquarters of Lyon Logistics.

20. That same day Defendants scheduled Plaintiff for a road test in one of their delivery trucks to assess his driving and required him to take a drug test.

21. Defendant Orane Haughton conducted Plaintiff's driving test and afterwards told him to come in the next day to start work for Lyon Logistics.

22. In the first several weeks of Plaintiff's employment, Defendants required him to

take approximately 30 hours of online training courses, for which he was never paid.

23. Throughout Plaintiff's employment, when he sought a raise or had other questions about pay, he would speak with his manager Defendant Orane Haughton. Haughton would then get the approval of Lyons Logistics owner Defendant Leonard Censi to set and alter rates of pay or make other decisions about compensation for Lyon Logistics employees like Plaintiff.

24. During his employment, Plaintiff reported to work at a warehouse facility at 300 Waterside Drive in Elmsford, New York. This warehouse was owned and operated by FEDEX Ground, which had a subcontract with Lyon Logistics to pick up and deliver FEDEX packages from that site. Lyon Logistics was given the right to park its trucks at the warehouse where its drivers would pick up their trucks and deliver as well as return packages to the warehouse.

25. During the day, Defendant Orane Haughton was stationed at the Elmhurst warehouse with a mobile phone and laptop. However, the actual Lyons Logistics office and headquarters was in nearby Hawthorne, New York.

26. Before he arrived at work, Plaintiff would receive a text with his delivery route for the day. Plaintiff would report to work at 6:30 am at the Elmhurst warehouse to pick up his truck and boxes for deliveries to customers. The deliveries of Plaintiff and all other Lyons Logistics drivers were exclusively to customers in Connecticut, especially in Fairfield County with a particular concentration in Greenwich.

27. Plaintiff would begin making deliveries around 8:40 am to 9:30 am and would be actively making deliveries on the road for between 7 and 9 hours each day, arriving back at the Elmsford warehouse between 3:30 pm and 6:00 pm.

28. Plaintiff usually worked six days per week, which could include Sunday. He worked between 50-55 hours per week.

29. Defendants paid Plaintiff and other drivers $1.30 per stop. He would typically make from 100-130 stops per day and sometimes higher. If he did not make at least 100 deliveries, he would be paid a flat rate of $125 per day. He would sometimes receive bonuses from Orane Haughton if he voluntarily made some of the stops from another driver's route for that day.

30. Defendants paid Plaintiff approximately $700-800 per week after taxes and provided him with a W-9 tax form.

31. Based on his 50-55 hour work week, Plaintiff was not paid the proper amount of overtime wages under the FLSA and NYLL.

32. He was also not paid the mandated spread of hour pay for days he worked longer than 10 hours, measured from the time he arrived at the Elmsford warehouse to when he completed deliveries and returned the company truck to the warehouse.

33. Plaintiff never received the weekly wage notice and statements required under the NYLL.

34. Plaintiff's infant son was born with cystic fibrosis on April 27, 2021, a serious and life-threatening respiratory condition. Defendants refused his request for the day off to be to be at the hospital when his son was being born.

35. After his birth, his son was frequently in and out of the hospital. Contracting a simple cold could be life-threatening for Plaintiff's son and Plaintiff frequently had to take him into the hospital for emergency care and for regular treatments.

36. At times these emergency room visits and regular treatments required Plaintiff to leave work to care for his son or to request time off in advance.

37. In August 2021, Plaintiff told Defendant Haughton that he needed time off to take care of his son. Haughton approved the time off and asked Plaintiff to keep him updated on

his son's condition, and when he would be able to come back to work. Plaintiff did so.

38. On November 30, 2021, prior to going to work Plaintiff informed Defendant Haughton that he could not work beyond 3:30pm because of childcare responsibilities for his son that day. Then ten stops into Plaintiff's delivery route the truck Defendants provided for him broke down. Plaintiff had to wait three hours for a mechanic sent by Defendants to arrive and complete the repairs. While awaiting completion of the repairs, Plaintiff used his hand cart and made six deliveries on the street where the truck broke down, Josephine Evaristo Avenue in Greenwich, Connecticut.

39. After the repairs were done, Plaintiff again notified his manager Defendant Haughton that he could not work later than 3:30pm to complete his route because he had no one else to provide childcare for his son.

40. Defendant Haughton refused to give Plaintiff permission to end his work day without completing the assigned delivery route. Given the need to return home to care for his son, Plaintiff returned to the Elmhurst warehouse before completing his route where he retrieved his personal car and went directly home.

41. The next morning, Plaintiff did not receive a text from Defendants with his delivery route.

42. Concerned, he drove directly to the Elmsford warehouse where he met with Defendant Haughton. Haughton told Plaintiff that Defendants could not accept "his inconsistency," and fired him on the spot.

43. However, it was not Plaintiff's "inconsistency", but Defendants' failure to safely and properly maintain their vehicles on November 30, 2021, which resulted in the disruption of Plaintiff's working day and shortening of the number of hours he had available to work. Plaintiff left at the time he needed to meet his family obligations over the improper objection by

his manager Haughton on behalf of the other Defendants.

44. Defendants terminated Plaintiff in retaliatory and discriminatory fashion for insisting on exercising his right to take the time as a caretaker to look after his handicapped infant son.

45. Since his termination, Plaintiff has been unable to find employment and has been suffering from depression, anxiety, and severe emotional distress. He has had difficulty sleeping at night.

### AS AND FOR A FIRST CAUSE OF ACTION
### *FLSA - UNPAID OVERTIME*

46. Plaintiff repeats and realleges all the allegations in the preceding paragraphs as if set forth fully herein.

47. At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

48. Plaintiff is a covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

49. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

50. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

51. Plaintiff is entitled to be paid at the rate of time and one-half his regular rate for all hours worked in excess of 40 hours per week.

52. Plaintiff regularly worked 50-55 hours per week and was not paid for the hours in excess of 40 hours in any given week.

53. At all relevant times, Defendants had, and continue to have a policy and practice of requiring employees to attend training and failing to pay for those hours at all, when all of the hours were in excess of 40 and should have been paid at overtime rates.

54. Plaintiff spent 30 hours at required trainings by defendants, all of which was unpaid and should have been paid at the overtime rate since they occurred after he had reached the 40-hour per week threshold.

55. At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff for all hours worked in excess of forty (40) hours per work week, which violated the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 207(a)(l) and 215(a).

56. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff at the overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of overtime compensation would financially injure Plaintiff.

57. Defendants have failed to make, keep and preserve records with respect to Plaintiff sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201, et seq., including 29 U.S.C. §§ 21 l(c) and 215(a).

58. Defendants failed to properly disclose or apprise Plaintiff of his rights under the FLSA.

59. As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff is entitled to liquidated damages pursuant to the FLSA.

60. Due to the willful and unlawful acts of Defendants, Plaintiff has suffered

damages in an amount to be determined at trial for overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

61. Plaintiff is entitled to an award of reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

**AS AND FOR A SECOND CAUSE OF ACTION**
*NYLL - UNPAID WAGES AND LACK OF WAGE NOTICES AND STATEMENTS*

62. Plaintiff repeats and realleges all the allegations in the preceding paragraphs as if set forth fully herein.

63. At all relevant times, Defendants employed Plaintiff within the meaning of New York Labor Law §§ 2 and 651.

64. In violation of the NYLL Defendants failed to pay Plaintiff at the mandated rate of time and a half for all hours worked in excess of 40 hours per week, including failure to pay Plaintiff at all for the 30 hours of mandated training, which was properly categorized as overtime work.

65. Defendants knowingly and willfully violated the rights of Plaintiff by failing to pay Plaintiff the required overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a work week.

66. Defendants failed to properly disclose or apprise Plaintiff of his rights under the NYLL.

67. Defendants failed to keep true and accurate records of hours worked by each employee, including Plaintiff, covered by an hourly wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

68. Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for

each employee, including Plaintiff, in contravention of the New York Labor Law§ 194(4), and New York State Department of Labor Regulations.

69. Defendants also failed to pay Plaintiff for any spread-of-hours wages for days in which he worked in excess of 10 hours

70. Due to the Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants the difference between his actual wages and the amounts he was owed under the New York Labor Law. The deficiency accounts for overtime compensations for all overtime hours, spread-of-hour pay, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law§§ 663(1), 198.

71. Plaintiff is also entitled to liquidated damages pursuant to New York Labor Law§ 663(1), and the New York State Wage Theft Prevention Act as well as for penalties for failure to issue and retain proper wage notices and statements under that Act.

**AS AND FOR A THIRD CAUSE OF ACTION**
*NEW YORK CITY HUMAN RIGHTS LAW – CARETAKER DISCRIMINATION*

72. Plaintiff repeats and realleges all the allegations in the proceeding paragraphs as if set forth fully herein.

73. The New York City Human Rights Law, NYCHRL, § 8-107(a) specifically prohibits discrimination by employers against their employees based on their "caregiver status."

74. Plaintiff qualifies as a caregiver under the NYCHRL because he "provides direct and ongoing care for a minor child", specifically his son with cystic fibrosis, a chronic respiratory illness.

75. Plaintiff's claims as a caregiver against Defendants are covered by the NYCHRL because he resides in Bronx, New York within the City of New York.

76. By firing Plaintiff for taking time to care for his infant son, under the

circumstances described herein, Defendants retaliated and discriminated against him based on his caregiver status.

77. Furthermore, Defendants by claiming that this termination was based on Plaintiff's alleged "inconsistency" engaged in the stereotypical categorization of an employee with caretaker responsibilities as less committed to his job than those without such responsibilities.

78. For this discriminatory violation of Plaintiff's rights as a caretaker Plaintiff is entitled to compensatory damages for his lost wages during the past year, and for the emotional distress he has suffered as a result of his unjust termination.

79. Defendants' termination of Plaintiff was in willful and conscious disregard of his rights under the NYCHRL entitling him to an award of punitive damages to discourage such improper conduct, pursuant to NYCHRL, § 8-502(a).

80. Plaintiff is also entitled to an award of reasonable attorney's fees and costs from Defendants, pursuant to NYCHRL, § 8-502(g).

## AS AND FOR A FOURTH CAUSE OF ACTION
### *NEW YORK STATE HUMAN RIGHTS LAW -FAMILIAL DISCRIMINATION*

81. Plaintiff repeats and realleges all the allegations in the preceding paragraphs as if set forth fully herein.

82. The New York State Human Rights Law, NYSHRL, § 296(1(a) prohibits discrimination by employers against their employees based on their "familial status", defined as covering an employee with a child, § 292(26).

83. This provision of the NYSHRL encompasses those with the responsibility within families for taking care of minor children, and the New York State Division of Human Rights has issued guidance that employers cannot discriminate against employees based on the

stereotypical belief that a person with children cannot be a reliable employee.

84. Plaintiff's right to not be subject to discrimination based on his familial responsibilities is covered by the NYSHRL because he is a New York state resident.

85. By firing Plaintiff for taking time to care for his infant son, under the circumstances described herein, Defendants retaliated and discriminated against him based on his familial status as the caretaker for his minor child.

86. Furthermore, Defendants by claiming that this termination was based on Plaintiff's alleged "inconsistency" exemplified in the stereotypical belief that an employee with the familial responsibility of caring for his child is not a reliable employee.

87. For Defendants' discriminatory violation of Plaintiff's familial rights as a caretaker Plaintiff is entitled to compensatory damages for his lost wages during the past year, and for the emotional distress he has suffered as a result of his unjust termination.

88. Defendants' termination of Plaintiff was in willful and conscious disregard of his rights under the NYSHRL entitling him to an award of punitive damages to discourage such improper conduct, pursuant to NYSHRL, § 298(9).

89. Plaintiff is also entitled to an award of reasonable attorney's fees and costs from defendants, pursuant to NYSHRL, § 298(10).

**AS AND FOR A FIFTH CAUSE OF ACTION**
*RETALIATION UNDER THE NYSHRL*

90. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

91. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden

under this article."

92. Defendants have engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's engagement in an activity protected under this law.

### AS AND FOR A SIXTH CAUSE OF ACTION
*RETALIATION UNDER THE NYCHRL*

93. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

94. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

95. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief from Defendants

    A.    Payment of unpaid overtime wages pursuant to the FLSA and NYLL;

    B.    Payment of Liquidated damages pursuant to the FLSA and NYLL;

    C.    Payment of unpaid spread-of-hours pay pursuant to the NYLL;

    D.    Prejudgment and post-judgment interest;

    E.    Payment of penalties for wage notice, statement, and record-keeping violations under the NYLL and the Wage Theft Prevention Act;

    F.    Compensatory Damages pursuant to the NYCHRL and NYSHRL for

discrimination based on caretaker/familial status;

      G.      Punitive Damages pursuant to the NYCHRL and NYSHRL for discrimination based on caretaker/familial status;

      H.      Reasonable attorneys' fees and costs of the action; and

      I.      Such other relief as this Court shall deem just and proper.

## JURY DEMAND

Pursuant to FRCP 38 Plaintiff demands trial by jury on all issues.

Dated: New York, New York
       January 23, 2023

**LAW OFFICE OF MOHAMMED GANGAT**

By: _____
Mohammed Gangat, Esq.
675 Third Avenue, Suite 1810
(718) 669-0714
mgangat@gangatllc.com

*Attorneys for Plaintiff Osnil Ventura*